JUDGE OETKEN

15 CV 00855

ADELMAN MATZ, P.C.
*Attorneys for Plaintiff*
1173A Second Avenue, Suite 153
New York, New York 10065
Phone: (646) 650-2207

RECEIVED
FEB 05 2015
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
X------------------------------------------------------X
YLD LIMITED,

                        Plaintiff,

                v.

THE NODE FIRM, LLC, NODE SOURCE, LLC
ISAAC SCHLUETER, DANIEL SHAW, AND
JOE MCCANN,

                    Defendants.
X------------------------------------------------------X

Case No.:

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

Plaintiff YLD Limited ("YLD" or "Plaintiff") by its attorneys, Adelman Matz, P.C.,

for its complaint against The Node Firm, LLC ("TNF LLC"), Node Source, LLC ("Node

Source"), Isaac Schlueter ("Schlueter"), Daniel Shaw ("Shaw"), and Joe McCann

("McCann") (collectively the "Defendants") alleges as follows:

### NATURE OF THE CASE

1.    This is an action by Plaintiff for copyright infringement, contributory

copyright infringement, vicarious copyright infringement, inducement of copyright

infringement under the Copyright Act of 1976, 17 U.S.C. §101 *et seq.*, trademark

infringement, unfair competition, unjust enrichment and fraudulent transfer, based on the

knowing and willful conduct by all the Defendants infringing YLD's copyrights in its

Node.js platform training materials (the "Training Materials"), infringing YLD's

trademark rights in and to "The Node Firm" trade name, engaging in acts that constitute

1

unfair competition and unjustly retaining the benefit of the use of YLD's trade name without compensation to YLD.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

3.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events giving rise to this claim occurred in this district, all of the Defendants conduct substantial business within the State of New York, Defendants transact business within the state to supply services in the state, have committed tortious acts within the state and/or committed tortious acts without the state  and Defendants regularly do business within the state, solicit business within the state, derive substantial revenue from services rendered in the state, and have infringed Plaintiff's intellectual property rights, including YLD's copyright and trademark within the State of New York as described herein, and at least one of the Defendants is a resident of the State of New York.

4.     In addition, upon information and belief, Defendants TNF LLC and Node Source have employees and agents within the State of New York and transact business within the state through those employees and/or agents.

5.     Venue is also proper in this district pursuant to 28 U.S.C. §1400(a) and (b) as Defendants and their agents reside and are found in this district and as the Defendants have committed acts of infringement in this district.

## NATURE OF THE PARTIES

6.     YLD Limited is a foreign corporation duly formed and existing under the laws of the United Kingdom, with its principal place of business at 32-38 Scrutton Street, EC2A 4RQ, London, England.

7.     YLD Limited is a privately held corporation.  Its shares are owned by Nuno Job.

8.     Upon information and belief, Defendant TNF LLC is a limited liability company duly formed and existing under the laws of the State of Texas.

9.     Upon information and belief, TNF LLC has no central office and has members, managers, employees, agents and/or team members in places all around the world, including New York State.

10.     Upon information and belief, Defendant Node Source is a limited liability company duly formed and existing under the laws of the State of Texas.

11.     Upon information and belief, Node Source has no central office and has members, managers, employees, agents and/or team members in places all around the world, including New York State.

12.     Upon information and belief, Defendant Joe McCann is an individual who resides in the State of New York.

13.     Upon information and belief, McCann owns one third (33.33%) of TNF LLC and Node Source and is the Business Director and/or CEO of TNF LLC and Node Source.

14.     Upon information and belief, Defendant Isaac Schlueter is an individual who resides in the State of California.

15.     Upon information and belief, Schlueter owns one third (33.33%) of TNF LLC and is the Advising Director of TNF LLC.

16.     Upon information and belief, Defendant Daniel Shaw is an individual who currently resides in the State of California.

17.     Upon information and belief, Shaw owns one third (33.33%) of TNF LLC and Node Source and is the Managing Director and/or CEO of TNF LLC and Node Source.

18.     Upon information and belief, each of the Defendants regularly transacts business within the State of New York in that they have entered into contracts in the State of New York to supply services, have committed tortious acts and the acts complained of herein in the State of New York, and have caused injury to Plaintiff within New York State. Additionally, Defendants regularly solicit business in and derive substantial revenue from the State of New York.

<b>FACTUAL BACKGROUND</b>

A.  <u>Plaintiff's Ownership of the Training Materials</u>

19.     Upon information and belief, Nodejitsu, Inc. ("Nodejitsu") is a corporation duly formed and existing under the laws of the state of Delaware with its principal place of business at 110 5th Avenue, 5th Floor, New York, NY 10011, and is a well-known provider of infrastructure, platform services, and software for enterprise and public cloud users that help its clients develop and deploy applications written for Node.js.

20.     In late 2011, Nuno Job, an individual working for and under contract with Nodejitsu, saw a lack of qualified companies providing consulting services to third parties who were beginning to program in Node.js.

21.     Nodejitsu believed it would benefit directly from creating these materials by charging licensing fees to consulting service providers who used these training materials. Nodejitsu believed that having its materials strategically placed in front of potential customers through the consulting service providers, would in turn drive business leads to Nodejitsu.

22.     In late 2011 and early 2012, Nodejitsu created a set of Node.js platform training materials. Specifically, Nodejitsu created, selected, arranged, and edited the text, computer program code and artwork for these training materials. Nodejitsu registered the training materials with the United States Copyright Office, attaining a U.S. Copyright Registration No. TX 7-87-084 with an effective date of January 27, 2014 (the "Training Materials").

23.     Nodejitsu, by way of agreement, written assignments and/or work for hire, was the copyright owner of exclusive rights with respect to the Training Materials.

24.     By virtue of written agreement, YLD has acquired the right, title and interest in and to the Training Materials, as well as all rights to income from the Training Materials and the right to prosecute all causes of action for past, present or future infringement thereof.

25.     Under the Copyright Act, YLD has the exclusive rights, among other things "to do and to authorize" reproduction of the Training Materials in copies, preparation of derivative works based upon the Training Materials, distribution of copies of the Training Materials, and to display the Training Materials.

**B. Plaintiff's Ownership of THE NODE FIRM Mark**

26.     In late November of 2011, YLD's founder Mr. Nuno Job began advertising and offering training, consulting and support services to third parties for Node.js programming, under the trade name "The Node Firm."

27.     On or about November 28, 2011, Job registered the domain name thenodefirm.com, registered to receive email @thenodefirm.com using the Google Apps service and created a website for The Node Firm.

28.     In the beginning of 2012, social media accounts, including Twitter, were registered under the handle "TheNodeFirm."

29.     In 2011 and 2012, YLD's founder Mr. Nuno Job advertised and offered its services under "The Node Firm" name. In addition, during this time frame Job invested significant time in pitching new clients, providing training services under "The Node Firm" name, developing client leads and new clients interested in training support and technology services branded as "The Node Firm." Job also promoted "The Node Firm" brand through speaking engagements, sponsorship opportunities, attendance at conferences and other networking opportunities. One of the customer leads Job spent significant time developing as a potential customer for "The Node Firm" branded services was PayPal.

30.     Among others, Job offered training services utilizing the Training Materials through an oral, non-exclusive, non-transferrable license under which Job would be allowed to use the Training Materials for Node.js training events and presentations and in exchange would capture business leads to drive business to the Nodejitsu platform. The license was terminable at will by Nodejitsu.

31.     Job invested substantial time, resources and hard work to develop "The Node Firm" brand and to ensure that services offered under "The Node Firm" name were of high quality and as such has established substantial goodwill in "The Node Firm" name in New York, around the country and the world.

32.     Through Job's efforts and use of "The Node Firm" trade name, as well as its advertising, offering and providing services in interstate commerce, and other use, Job established ownership rights in "The Node Firm" trade name and the exclusive right to use "The Node Firm" name in interstate commerce in connection with the provisioning of consulting services.

33.     Thereafter, all right in and to "The Node Firm" trade name, along with the goodwill associated with same and the right to sue for all past infringement, was validly assigned by Job to YLD, so that YLD could continue providing consulting services under The Node Firm name.

### C. Defendants' Infringing Acts

34.     In late 2011, Defendant Shaw was aware that Job was offering and providing consulting services under "The Node Firm" name and that Nodejitsu owned the copyright in and to all of the Training Materials and that said materials were used by Job providing services as "The Node Firm" through a non-exclusive, non-transferrable oral license agreement.

35.     In 2012, Defendants McCann and Schlueter were aware that Job was offering and providing consulting services under "The Node Firm" name and that Nodejitsu owned the copyright in and to all of the Training Materials and that said materials

7

were used by Job providing services as "The Node Firm" through a non-exclusive, non-transferrable oral license agreement.

36.     Upon information and belief, in early 2013, Defendants Shaw, McCann and Schlueter decided to form a new company that would offer the same training, consulting and support services that were being offered by Job for the Node.js platform.

37.     Upon information and belief, Defendants Shaw, McCann and Schlueter wanted to offer these services through a new company that would be owned by them, but wanted to use "The Node Firm" trade name so that they could utilize the good will and client trust associated with "The Node Firm" trade name, which had been created by Job.

38.     Essentially, Defendants Shaw, McCann and Schlueter wanted to take over the existing consulting, training and support business that had been started, cultivated and substantially developed by Job under the name "The Node Firm."

39.     Job communicated to Defendants Shaw, McCann and Schlueter that he was willing to consider allowing Defendants Shaw, McCann and Schlueter's new company to use "The Node Firm" trade name, provided that he was properly compensated for use of the name, and that Job's other conditions of a license were satisfied.

40.     In addition, on or around February 5, 2013, directly prior to the formation of their new Company, Shaw and McCann were advised in writing by Nodejitsu, who owned the copyrights in and to the Training Materials at that time, that they needed a formal written agreement to use the Training Materials. Among other things, any agreement would have needed to include terms for the license of the Training Materials from Nodejitsu, it would also have needed to include compensation to Nodejitsu in the form of

formalization of lead generation system to Nodejitsu, would need to include preferred pricing and would need to address certain liability issues.

41.     In emails exchanged between the parties in February of 2013, Shaw and McCann acknowledged that Nodejitsu then owned the Training Materials and that they needed to license any use of the Training Materials from Nodejitsu for the new company they planned to form.

42.     Upon information and belief, on or about February 28, 2013, Defendants Shaw, McCann and Schlueter started a limited liability company under the name The Node Firm, LLC (defined herein as "TNF LLC").

43.     No license for use of the Training Materials was ever obtained by Shaw, McCann, Schlueter or TNF LLC.

44.     No license for use of the name "The Node Firm" was ever obtained by Shaw, McCann, Schlueter or the company they formed The Node Firm LLC (TNF LLC).

45.     Upon information and belief, beginning on February 28, 2013, Shaw, McCann, Schlueter, and TNF LLC, began offering, advertising and providing consulting, support and training services using the name "The Node Firm" without permission or authorization from Job.

46.     Upon information and belief, beginning on February 28, 2013, Shaw, McCann, Schlueter, and/or TNF LLC (under the direction and control of Shaw, McCann and Schlueter) have prepared unauthorized derivative works of the Training Materials, without authorization or permission from Nodejitsu or YLD.

47.     Upon information and belief, a qualitatively and quantitatively significant portion of the unauthorized derivative was appropriated from and/or based on the Training Materials owned by YLD and is substantially similar to the Training Materials.

48.     Upon information and belief, between February 28, 2013 and the present, TNF LLC, at the direction and under the control of Shaw, McCann and Schlueter, have offered trainings that utilize and display the Training Materials and/or unauthorized derivatives thereof to third parties including PayPal, Netflix, and Symantec, without authorization or permission from Nodejitsu or YLD.

49.     Upon information and belief, between February 28, 2013 and the present, TNF LLC, at the direction and under the control of Shaw, McCann and Schlueter, have transmitted the Training Materials and/or unauthorized derivatives thereof to third parties including PayPal, Netflix, and Symantec, without authorization or permission from Nodejitsu or YLD.  Instances where TNF LLC, Shaw, McCann and Schlueter have transmitted the Training Materials and/or unauthorized derivatives thereof via the internet and/or electronic mail constitute unauthorized "reproductions" of said Training Materials.

50.     Upon information and belief, between February 28, 2013 and the present, TNF LLC, at the direction and under the control of Shaw, McCann and Schlueter, issued licenses to third parties for use of the Training Materials and/or unauthorized derivatives thereof, without authorization or permission from Nodejitsu or YLD.

51.     By way of example, upon information and belief, TNF LLC, at the direction and under the control of Shaw, McCann and Schlueter, licensed the Training Materials to PayPal, among others, for PayPal to train their employees and contractors, in exchange for over one million dollars ($1,000,000).

10

52.     Upon information and belief, beginning on February 28, 2013, TNF LLC, at the direction and under the control of Shaw, McCann and Schlueter, also authorized, encouraged and induced, third parties including but not limited to PayPal, to reproduce, distribute, and display the Training Materials, and/or the unauthorized derivatives thereof, without authorization or permission from Nodejitsu or YLD.

53.     Upon information and belief, beginning on February 28, 2013, TNF LLC, Shaw, McCann and Schlueter derived substantial profits from their exploitation and infringing use of the Training Materials.

54.     Upon information and belief, beginning on February 28, 2013, TNF LLC, Shaw, McCann and Schlueter derived substantial profits from their exploitation and use of "The Node Firm" trade name and the goodwill associated therewith.

55.     Upon information and belief, by way of just one example, based on the reputation of "The Node Firm" brand, PayPal, believing that TNF LLC was associated with "The Node Firm" brand, signed a contract with TNF LLC wherein TNF LLC would provide training services to PayPal in exchange for over one million dollars ($1,000,000).

56.     From February 2013 through February 2014, Job advised Defendants orally and in writing, on behalf of himself, YLD and Nodejitsu, that they were not permitted to use "The Node Firm" trade name or the Training Materials without permission from Job and Nodejitsu, respectively.

57.     On or about February 4, 2014, Plaintiff sent Defendants a cease and desist letter demanding that Defendants cease and desist from use of the Training Materials and "The Node Firm" trade name.

58.   Upon information and belief, on or about February 25, 2014, Shaw and McCann formed a new company under the name Node Source LLC.

59.   Upon information and belief, it was the intent of Defendants that Node Source absorb the business of TNF LLC.

60.   Upon information and belief, Node Source is engaged in the same business as TNF LLC, in that like TNF LLC, Node Source is engaged in the business of providing consulting, training and support services for Node.js programmers using the Training Materials and unauthorized derivatives thereof.

61.   Upon information and belief, Node Source has continued to use substantially the same management and personnel, structure, assets, property, customer lists, and business format and general business operations as that of TNF LLC.

62.   Upon information and belief, Node Source assumed the assets of TNF LLC, without adequate compensation therefor, and is operating as a mere continuation of TNF LLC.

63.   Upon information and belief, Node Source took and is utilizing all of the assets of TNF LLC including cash, contracts and receivables, without adequate compensation to TNF LLC therefor.

64.   Upon information and belief, since its formation in February of 2014, Node Source, at the direction and under the control of Shaw and McCann, have also reproduced, distributed, displayed, licensed and otherwise exploited the Training Materials and/or unauthorized derivatives thereof, without authorization or permission from Nodejitsu or YLD.

65.     Additionally, upon information and belief, since its formation in February of 2014, Node Source, at the direction and under the control of Shaw and McCann, has created derivative works of the Training Materials, without authorization or permission from Nodejitsu or YLD.

66.     Upon information and belief, since its inception, Node Source, at the direction and under the control of Shaw and McCann, also authorized, encouraged and induced third parties to reproduce, distribute, and display the Training Materials, and/or the unauthorized derivatives thereof, without authorization or permission from Nodejitsu or YLD.

67.     Upon information and belief, through the present Defendants continue to use and exploit the Training Materials and "The Node Firm" trade name for their own commercial purposes without authorization or permission from YLD respectively.

68.     Upon information and belief, Defendants' infringing acts are willful and deliberate and committed with prior notice of Nodejitsu's and subsequently YLD's ownership of the copyright in and to the Training Materials.

69.     Upon information and belief, Defendants' infringing acts are willful and deliberate and committed with prior notice of YLD's ownership rights in and to "The Node Firm" trade name.

70.     As a result of Defendants' unlawful actions, Plaintiff has been damaged and has suffered, and continues to suffer, irreparable injury for which it has no adequate remedy at law. An injunction is necessary to ensure that Defendants permanently cease any further use of the Training Materials and "The Node Firm" name.

## COUNT I

## COPYRIGHT INFRINGEMENT OF THE TRAINING MATERIALS
### (Against All Defendants)

71.     Plaintiff repeats and re-alleges each and every allegation of paragraphs 1 through 70 as above as if fully set forth herein.

72.     YLD is the owner of a valid copyright in and to the Training Materials.

73.     Upon information and belief, Defendants have infringed YLD's exclusive rights in and to its copyrights by *inter alia*, reproducing, distributing, displaying, licensing and otherwise exploiting the Training Materials.

74.     Upon information and belief, Defendants have further infringed on YLD's copyright in and to the Training Materials by preparing, distributing, licensing, displaying and otherwise exploiting unauthorized derivatives of the Training Materials.

75.     Neither Nodejitsu nor YLD authorized any of the Defendants to copy, reproduce, display, distribute, license, or otherwise exploit the Training Materials or any derivative thereof.

76.     Additionally, neither YLD nor Nodejitsu authorized any of the Defendants to make derivative works of the Training Materials.

77.     Defendants did not obtain any permission, consent or license for the use, distribution, copying, reproduction, or exploitation of the Training Materials nor did they obtain permission, consent or license for the preparation of derivative works of the Training Materials.

78.     Upon information and belief, Defendants' infringing acts alleged herein were willful, deliberate, and committed with prior notice and knowledge of the copyright in and to the Training Materials.

79.     Upon information and belief, Plaintiff has been harmed by the continued infringement by Defendants of YLD's copyright in and to the Training Materials.

80.     Upon information and belief, Defendants are likely to continue infringing YLD's copyright in and to the Training Materials unless they are enjoined from further infringement.

81.     Upon information and belief, the infringing acts of Defendants have been, are and, if continued hereafter, will continue to be committed willfully.

82.     As a direct and proximate result of their actions, Defendants are liable to the YLD for willful copyright infringement under 17 U.S.C. § 501, in violation of YLD's exclusive rights under 17 U.S.C. § 106.

83.     YLD suffered, and will continue to suffer, actual losses in an amount not yet ascertained but to be determined at trial.

84.     In addition to YLD's actual damages, YLD is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. §504.

85.     In the alternative, YLD is entitled to statutory damages, pursuant to 17 U.S.C. §504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of the Defendants' willful copyright infringement.

86.     Unless and until Defendants' conduct is enjoined by this Court, they will continue to cause irreparable injury that cannot fully be compensated for or measured in money and as such, YLD is also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under the Copyright Act.

87.     YLD is further entitled to recover its attorneys' fees and costs of this action pursuant to 17 U.S.C. § 505.

## COUNT II

## INDUCEMENT OF COPYRIGHT INFRINGEMENT
## OF THE TRAINING MATERIALS
### (Against All Defendants)

88.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 – 87 above with the same force and effect as if set forth fully herein.

89.     Defendants' clients have engaged in, including but not limited to, the unauthorized reproduction, display, and distribution of the copyrighted Training Materials and/or unauthorized derivatives thereof. As a result, the Defendants' clients are liable for direct copyright infringement of YLD's exclusive rights of reproduction, display, and distribution under 17 U.S.C. § 106.

90.     Each one of Defendants' clients' infringing acts has been encouraged and made possible by Defendants, whose intent is to promote and encourage the unlawful reproduction, display, distribution and exploitation of the copyrighted Training Materials and/or unauthorized derivatives thereof.

91.     As a direct and proximate result of their actions, Defendants are liable to the YLD for inducing the infringing acts of their clients, in violation of Sections 106 and 501 of the Copyright Act. YLD suffered, and will continue to suffer, actual losses in an amount not yet ascertained, but to be determined at trial.

92.     In addition to YLD's actual damages, YLD is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. §504.

93.     In the alternative, YLD is entitled to statutory damages, pursuant to 17 U.S.C. §504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of the Defendants' willful copyright infringement.

94.     Unless and until Defendants' conduct is enjoined by this Court, they will continue to cause irreparable injury that cannot fully be compensated for or measured in money and YLD is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under the Copyright Act.

95.     YLD is further entitled to recover its attorneys' fees and costs of this action pursuant to 17 U.S.C. § 505.

### COUNT III

### CONTRIBUTORY COPYRIGHT INFRINGEMENT
### OF THE TRAINING MATERIALS
**(Against All Defendants)**

96.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 – 95 above with the same force and effect as if set forth fully herein.

97.     Defendants' clients have engaged in, including but not limited to, the unauthorized reproduction, display, and distribution of the copyrighted Training Materials and/or unauthorized derivatives thereof. As a result, the Defendants' clients are liable for direct copyright infringement of YLD's exclusive rights of reproduction, display, and distribution under 17 U.S.C. § 106.

98.     Upon information and belief, Defendants had actual and constructive knowledge of their clients' infringing activity and materially contributed to that activity by licensing the Training Materials, and/or unauthorized derivatives thereof, to said third parties and approving and encouraging their Clients to display, reproduce and distribute the Training Materials to employees within those organizations, thus urging and contributing to infringing conduct.

99.     At the time they began using the materials in 2013, Defendants were aware of Nodejitsu's ownership of the Training Materials prior to the start of any of the above mentioned acts, and despite requests, have refused to take any action to halt the infringing conduct.

100.    As a direct and proximate result of their actions, Defendants are liable to the YLD for contributorily infringing YLD's copyright, in violation of Sections 106 and 501 of the Copyright Act.  YLD suffered, and will continue to suffer, actual losses in an amount not yet ascertained, but to be determined at trial.

101.    In addition to YLD's actual damages, YLD is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. §504.

102.    In the alternative, YLD is entitled to statutory damages, pursuant to 17 U.S.C. §504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of the Defendants' willful copyright infringement.

103.    Unless and until Defendants' conduct is enjoined by this Court, they will continue to cause irreparable injury that cannot fully be compensated for or measured in money and YLD is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under copyright.

104.    YLD is further entitled to recover its attorneys' fees and costs of this action pursuant to 17 U.S.C. § 505.

## COUNT IV

## VICARIOUS COPYRIGHT INFRINGEMENT
## OF THE TRAINING MATERIALS
### (Against All Defendants)

105.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 – 104 above with the same force and effect as if set forth fully herein.

106.   Defendants' clients have engaged in various infringing acts, including but not limited to, the unauthorized reproduction, display, and distribution of the copyrighted Training Materials and/or unauthorized derivatives thereof. As a result, the Defendants' clients are liable for direct copyright infringement of YLD's exclusive rights of reproduction, display, and distribution under 17 U.S.C. § 106.

107.   Upon information and belief, Defendants had the legal right and ability to supervise and control the infringing activity that occurred through their services.

108.   Upon information and belief, by promoting TNF LLC and Node Source's ability to provide Node.js training seminars to its clients and by using and disseminating the copyrighted Training Materials in those seminars and licensing the Training Materials to their Clients for further display and reproduction within those organizations, Defendants are intimately involved in supervising and controlling the infringing activity.

109.   Upon information and belief, Defendants nevertheless refused to exercise any control over the illegal reproduction, display, and distribution of the copyrighted Training Materials, and as a direct and proximate result of such failure, Defendants' clients have infringed the copyrighted Training Materials.

110.   Upon information and belief, Defendants derived a substantial financial benefit from those infringements of the copyrighted Training Materials.

111.   Upon information and belief, TNF LLC and Node Source were paid by their clients for the training services they provided, which were based on the unauthorized use of the copyrighted Training Materials.

112.   Upon information and belief, Schlueter, Shaw and McCann also derived substantial benefit from those infringements by distributing the profits from their infringing activities to themselves.

113.   Upon information and belief, Defendants also derived substantial benefit from licensing the Training Materials and/or unauthorized derivatives thereof to their clients for the purpose of their clients running their own internal training sessions.

114.   As a direct and proximate result of their actions, Defendants are liable to the YLD for vicariously infringing YLD's copyright, in violation of Sections 106 and 501 of the Copyright Act.  YLD suffered, and will continue to suffer, actual losses in an amount not yet ascertained, but to be determined at trial.

115.   In addition to YLD's actual damages, YLD is entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. §504.

116.   In the alternative, YLD is entitled to statutory damages, pursuant to 17 U.S.C. §504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of the Defendants' willful copyright infringement.

117.   Unless and until Defendants' conduct is enjoined by this Court, they will continue to cause irreparable injury that cannot fully be compensated for or measured in money and YLD is accordingly also entitled to an injunction pursuant to 17 U.S.C. § 502 prohibiting further infringement of its exclusive rights under copyright.

118.   YLD is further entitled to recover its attorneys' fees and costs of this action pursuant to 17 U.S.C. § 505.

## COUNT V

## TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. §1125(a)
### (Against All Defendants)

119.   Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 – 118 above with the same force and effect as if set forth fully herein.

120.   Through Job's efforts and use of "The Node Firm" trade name, he established ownership rights in "The Node Firm" name and the exclusive right to use "The Node Firm" name in interstate commerce in connection with the provisioning of consulting services, which was assigned to YLD, along with, *inter alia*, the goodwill associated therewith.

121.   Defendants' use of "The Node Firm" trade name in connection with the provisioning of support, consulting and training services constitutes a false designation of origin and/or a false or misleading description and representation of fact which is likely to cause confusion and mistake, and is likely to deceive as to the affiliation, connection and/or association of Defendants with YLD and is likely to mislead consumers to believe that the Defendants' services are sponsored, approved or somehow associated with YLD.

122.   By reason of the foregoing, the trade and public are likely to be and will continue to be confused, misled, or deceived, and YLD has, is now, and will continue to suffer irreparable injury to its goodwill and business reputation for which it has no adequate remedy at law.

123.    Upon information and belief, Defendants have intentionally and knowingly adopted and used a trade name that is likely to cause confusion in the marketplace as to the source, origin, or sponsorship of the goods offered for sale and sold by the Defendants.

124.    By virtue of the foregoing, Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

125.    Defendant's acts are causing and continue to cause YLD irreparable harm in the nature of loss of control over its reputation and loss of substantial consumer goodwill. The irreparable harm to YLD will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

126.    Upon information and belief, Defendants are using "The Node Firm" trade name, willfully and with knowledge that they do not have the right to use said name, and with the intent to unfairly compete with YLD, and benefit from the goodwill associated with "The Node Firm" name.

127.    Defendants' conduct has caused, and is likely to continue causing, substantial injury to the public and to YLD, and YLD is entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

## COUNT VI

### COMMON LAW UNFAIR COMPETITION
**(Against All Defendants)**

128.    Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 -127 above as though fully set forth herein.

129.    Defendants' use of "The Node Firm" name to offer support, training and consulting services in connection with Node.js, without the authorization or consent of

YLD is likely to cause confusion and mistake and to deceive consumers as to the source, origin, sponsorship or affiliation of Defendants and constitutes trade name and trademark infringement, unfair competition and misappropriation of YLD's goodwill and reputation.

130. Upon information and belief, Defendants adopted and used "The Node Firm" name as a trade name and trademark with the intent to trade off of the goodwill and reputation of "The Node Firm" name, which is owned by YLD.

131. Upon information and belief, Defendants have infringed YLD's mark as alleged herein with the intent to deceive the public into believing that services offered by Defendants are made by, approved by, sponsored by or affiliated with, YLD. Defendants' acts as alleged herein were committed with the intent to pass off and palm off Defendants' services as the services of Job (now YLD), and with the intent to deceive and defraud the public.

132. Upon information and belief, Defendants adopted and continued to use "The Node Firm" name with knowledge of Job's (now YLD's) ownership of same. Despite this knowledge and the fact that Defendants could provide goods and services under another name, it decided instead to misappropriate "The Node Firm" name and use it as its own.

133. Defendants' acts are causing and continue to cause YLD irreparable harm in the nature of loss of control over its reputation, and loss of substantial consumer goodwill. This irreparable harm to YLD will continue, without any adequate remedy at law, unless and until Defendants' unlawful conduct is enjoined by this Court.

## COUNT VII

## UNJUST ENRICHMENT
### (Against All Defendants)

134.    Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 -133 above as though fully set forth herein.

135.    Defendants are using YLD's trademark, and the goodwill associated therewith for their own commercial gain without making any payments to YLD.

136.    Upon information and belief, Shaw, McCann and Schlueter started TNF LLC, with the intention to take the clients, leads, and goodwill already developed in "The Node Firm" brand name and use it for their own commercial benefit.

137.    Upon information and belief, when TNF LLC was formed, at the instruction of Shaw, McCann and Schlueter, TNF LLC took over the clients and business leads and started using "The Node Firm" name so that TNF LLC could utilize the goodwill associated with said name for their own commercial benefit.

138.    Upon information and belief, TNF LLC have obtained monetary benefit from their use of "The Node Firm" name and the goodwill associated therewith, without payment or compensation to YLD.

139.    Upon information and belief, by way of just one example, based on the reputation of "The Node Firm" brand, PayPal, believing that TNF LLC was associated with "The Node Firm" brand, signed a contract with TNF LLC wherein TNF LLC would provide training services to PayPal in exchange for over one million dollars ($1,000,000).

140.    Upon information and belief, Shaw, McCann and Schlueter also benefitted from their use of "The Node Firm" name, as they were compensated by TNF LLC.

141.    Upon information and belief, Node Source has also benefitted from the use of "The Node Firm" name and the goodwill associated therewith as it has taken over the business of TNF LLC and is a mere continuation of same and benefits from the reputation and goodwill associated with "The Node Firm" brand.

142.    Upon information and belief, Defendants' above described benefit has been at the expense of YLD and equity and good conscience require restitution.

143.    YLD is entitled to the reasonable value Defendants' use of "The Node Firm" name, and the goodwill and trust in same, which Defendants benefitted from, in an amount to be determined at trial.

## COUNT VIII

### FRAUDULENT CONVEYANCE
**(Against Node Source)**

144.    Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 -143 above as though fully set forth herein.

145.    Upon information and belief, on or about February 25, 2014, very shortly after receiving Plaintiff's cease and desist letter which *inter alia,* demanded that TNF LLC, Shaw, McCann, and Schlueter cease and desist from use of Plaintiff's property and demanded compensation for past use of said property, Shaw and McCann, formed a new company under the name Node Source LLC.

146.    Upon information and belief, at the time Node Source was formed Plaintiff was a present and/or future creditor of TNF LLC and Plaintiff's identity was known to TNF LLC, Shaw, McCann, and Schlueter

147.   Upon information and belief, following the formation of Node Source, Shaw, McCann, Schlueter and TNF LLC transferred and conveyed TNF LLC's assets, including cash, receivables and contracts to Node Source.

148.   Upon information and belief, no consideration, and/or inadequate consideration, was paid for the assets transferred to Node Source.

149.   Upon information and belief, the above conveyances rendered TNF LLC insolvent or with an unreasonably small amount of property.

150.   Upon information and belief, the conveyances were made to hinder, delay or defraud Plaintiff's ability to recover on any potential claims against TNF LLC.

151.   As such, the above conveyances were fraudulent against Plaintiff pursuant to Debtor and Creditor Law §§ 273, 274 and 276.

152.   By reason of the foregoing, Node Source is liable to Plaintiff for all sums TNF LLC is liable to Plaintiff for, as set forth in the above causes of action, in an amount to be determined at trial.

**WHEREFORE,** Plaintiff respectfully requests judgment against the Defendants, and each of them jointly and severally, as follows:

a)   On Counts I through IV, for such permanent injunctive relief as is necessary to prevent or restrain infringement of the Copyrighted Training Materials, including a preliminary injunction requiring that Defendants and their agents, servants, employees, officers, directors, attorneys, successors, assigns, licensees, and all others in active concert or participation with any of them, cease infringing, publishing, licensing, exploiting, or causing, aiding, enabling, facilitating, encouraging, promoting, inducing or materially contributing to or participating in the infringement,

publishing, licensing, or exploiting of any of YLD's copyrights or exclusive rights protected by the Copyright Act (whether now in existence or hereafter created).

b) That the Court enters judgment against Defendants, and each of them, that Defendants have infringed YLD's rights in the copyright in the Training Materials under 17 U.S.C. §501, and that the infringement by Defendants was willful.

c) On counts 1 through IV, that the Court enter judgment against the Defendants, jointly and severally, for damages suffered by YLD as a result of the infringement complained of herein, as well as disgorgement of any profits attributable to the Defendants' infringement, including the value of all gains, profits, advantages, benefits, and consideration derived by Defendants from and as a result of their infringement of YLD's copyright in the Training Materials, in an amount to be determined at trial; or

d) In the alternative, if YLD so elects, in lieu of recovery of their actual damages and Defendants' profits, for an award of statutory damages against Defendants, for their acts of willful copyright infringement.

e) That the Court enters an Order pursuant to 17 U.S.C. § 503 mandating the impounding of all infringing copies of the Training Materials, including the derivative works created therefrom, and any other materials prepared by Defendants containing any copies or any portions thereof.

f) For costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

g) Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or

under authority from Defendants, or in concert or participation with Defendants, and each of them, should be permanently enjoined, from:

    i.   using "The Node Firm" name, or any other imitation or simulation thereof in connection with Defendants' services;

    ii.   using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' services that is likely to cause confusion, mistake, deception, or public misunderstanding that such services are provided by YLD, or are sponsored or authorized by or in any way connected or related to YLD;

    iii.   passing off, palming off, or assisting in passing off or palming off, Defendants' services as those of YLD, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

    iv.   Engaging in any activity constituting unfair competition with YLD, or constituting an infringement of YLD's trade name; and

    v.   Registering or applying to register as a trademark, service mark, trade name, internet domain name or any other source identifier or symbol of origin, that is at all similar "The Node Firm," or any other mark or name that infringes on or is likely to be confused with YLD's trade name.

h) That Defendants be required to account for and pay any and all profits derived from the provisioning of its services and for all damages sustained by YLD by reason of said acts of infringement and unfair competition complained of herein;

i)   That Defendants pay YLD for all of Defendants' profits, gains and sums and for all damages sustained arising from the acts of infringement and unfair competition alleged herein, including that YLD should be awarded all damages caused by the acts forming the basis of this Complaint, in an amount to be determined at trial;

j)   That this Court award YLD treble the amount of actual damages suffered by YLD in an amount to be determined at trial;

k)   The costs of this action;

l)   That this is an exceptional case and that Defendants should be required to pay to YLD its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

m)   Based on Defendants' willful and deliberate infringement of YLD's trade name, and by reason of Defendants' fraud and palming off, and to deter such conduct in the future, YLD should be awarded punitive damages;

n)   On Count VII, a sum to be determined at trial, that represents restitution for YLD's work, labor, services, and development of "The Node Firm" brand and the goodwill YLD built in said name;

o)   On Count VIII, a sum to be determined at trial, which represents all sums TNF LLC is liable to Plaintiff for as set forth in the above causes of action;

p)   Costs and attorneys' fees; and

q)   For such other and further relief in favor of Plaintiff as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all claims for relief and issues triable by jury.

Dated: New York, New York
       February 4, 2015

Respectfully submitted,
ADELMAN MATZ, P.C.

Sarah M. Matz, Esq.
Gary Adelman, Esq.
*Attorneys for Plaintiff*
1173A Second Ave, Suite 153
New York, New York 10065
Telephone: (646) 650-2207
sarah@adelmanmatz.com
g@adelmanmatz.com